USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/27/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

AFFILIATED FM INSURANCE COMPANY,

        Plaintiff,

        v.

LIBERTY MECHANICAL CONTRACTORS,
INC. d/b/a LIBERTY MECHANICAL, INC.,
DE-CON MECHANICAL, LLC d/b/a DE-CON
MECHANICAL CONTRACTORS, LLC d/b/a
DE-CON PLUMBING, LLC,

        Defendants.

LIBERTY MECHANICAL CONTRACTORS,
INC. d/b/a LIBERTY MECHANICAL, INC.,
DE-CON MECHANICAL, LLC d/b/a DE-CON
MECHANICAL CONTRACTORS, LLC d/b/a
DE-CON PLUMBING, LLC,

        Third Party Plaintiffs,

        v.

ROBERT ETTINGER & ASSOC. a/k/a
ETTINGER & ASSOC.

        Third Party Defendant.

LIBERTY MECHANICAL CONTRACTORS,
INC. d/b/a LIBERTY MECHANICAL, INC.,
DE-CON MECHANICAL, LLC d/b/a DE-CON
MECHANICAL CONTRACTORS, LLC d/b/a
DE-CON PLUMBING, LLC,

        Second Third-Party Plaintiffs,

        v.

12 Civ. 5160 (KPF)

OPINION AND ORDER

```
MILLENNIUM MASONRY, INC., AND      :
VICTAULIC COMPANY                  :
                                   :
          Second Third-Party       :
          Defendants.              :
                                   :
-----------------------------------X
```

KATHERINE POLK FAILLA, District Judge:

Plaintiff Affiliated FM Insurance Company ("Affiliated"), as subrogee under its insurance policy with Greenwich Club Residences LLC ("Greenwich Club"), commenced this negligence action against Defendants Liberty Mechanical Contractors, LLC ("Liberty") and De-Con Mechanical LLC ("De-Con") (collectively, "Defendants") to recover damages caused by Defendants' allegedly negligent installation of plumbing joints in a building located at 88 Greenwich Street in Manhattan ("88 Greenwich"). Defendants now move to amend their Answer to interpose the affirmative defense of statute of limitations. For the reasons set forth in the remainder of this Opinion, the motion is GRANTED.

## FACTUAL BACKGROUND

### A. The Underlying Claim for Damages

On March 29, 2011, according to Plaintiff's Complaint, one of the plumbing joints in 88 Greenwich ruptured and separated, causing thousands of gallons of water to flood the building. (Compl. ¶ 15). 88 Greenwich was built in the 1920's, and had been used for office and commercial purposes until approximately 2000, when it was converted to residential purposes, for which it continues to be used today. (Compl. ¶¶ 9-10).

In 1999, during the conversion of 88 Greenwich from commercial to residential rental units, the then-owner of the building, Black Diamonds, LLC ("Black Diamonds"), subcontracted with Defendants to perform plumbing services. (Affidavit of Deborah Del Sordo dated June 17, 2013 ("Del Sordo Aff."), Exhs. B, F). These services included the installation of "a new 5-inch water riser running from the basement to the top floors, as well as certain collateral connections required to fill various fire suppression and domestic water tanks in the building." (Compl. ¶ 12; Del Sordo Aff., Exh. F). The Complaint alleges that in or about 2001, the plumbing equipment was installed. (Compl. ¶ 13). The Complaint does not, however, include any facts concerning the process by which the plumbing equipment was installed, nor does it allege any services provided by Defendants after the installation was complete.

Black Diamonds sold the building to 88 Greenwich Owner LLC ("Greenwich Owner") in 2005, during which time the property was converted from a residential rental building to a condominium, with Greenwich Owner serving as condominium sponsor. (Compl. ¶¶ 10-11; Del Sordo Aff., Exh. N; Declaration of Nancy Del Pizzo, dated June 28, 2013 ("Del Pizzo Decl."), Exh. S).[1] In August 2008, the Board of Managers of Greenwich Club became the current owner. (Compl. ¶ 14; Del Pizzo Decl., Exh. U; *but see* Del Sordo Aff., Exh. B (testimony that sponsor Buttonwood/Thor Entities was in control of 88 Greenwich in March 2011)).

---

[1] The Court notes that Exhibit N to the Del Sordo Affidavit identifies the law firm of Proskauer Rose LLP as being involved with the conveyance of 88 Greenwich from Black Diamonds to Greenwich Owner. The Court's husband is now, but was not at the time of the conveyance, a partner at Proskauer Rose LLP. Accordingly, the Court finds no basis for recusal.

3

Plaintiff issued an insurance policy (the "Policy") to Greenwich Club that was in effect at the time of the March 29, 2011 plumbing failure, and that covers the damage sustained to the property as a result of the alleged failure. (Compl. ¶ 8). In its Complaint, Plaintiff alleges that the plumbing joint failure resulted in damages exceeding $1.6 million, and that are currently expected to reach $1.65 to $1.85 million. (Compl. ¶ 21). Pursuant to the Policy, Plaintiff paid Greenwich Club, and consequently became subrogated to any claims Greenwich Club has against third parties, to the extent of Plaintiff's payment. (Compl. ¶¶ 20-21; *see also* Del Pizzo Decl., Exh. T).

**B.   Procedural History**

On July 2, 2012, Plaintiff filed a one-count negligence complaint against Defendants. (Dkt. # 1). In that Complaint, Plaintiff sought to recoup any payments it had made or would make to Greenwich Club under the Policy to cover damages from the plumbing failure. (Compl. ¶ 26). On August 8, 2012, Defendants filed their Answer. (Dkt. # 7). In August and October of that year, Defendants filed third-party complaints against the mechanical engineer on the project and the manufacturer of the pipe, respectively. (Dkt. # 9, 17).[2] Those third-party defendants, in turn, filed cross-claims against Defendants. (Dkt. # 11, 20).

The Court filed an initial case management plan and scheduling order (the "Initial Scheduling Order") on October 25, 2012. (Dkt. # 16). Among other things, the Initial Scheduling Order specified that fact and expert discovery would be

---

[2]   The October 2012 third-party complaint was also served on the project mason, but that party has not responded.

completed by May 1, 2013, and that motions to amend the pleadings or join additional parties would be due within 45 days of the Order. (*Id.*). At the request of the parties, and as a result of logistical and other complications attributed to Hurricane Sandy, the Court issued an amended case management plan and scheduling order (the "Amended Scheduling Order") on January 30, 2013, which, among other things, (i) extended the discovery deadlines for a period of approximately eight weeks and (ii) specified that motions to amend or join would be due within 45 days of the date of the Order. (Dkt. # 25; *see also* Dkt. # 26 (parties' request for extension)).

By letter dated May 22, 2013, the parties sought and received a further extension of the deadlines set forth in the Amended Scheduling Order. (Dkt. # 31). Pursuant to the Court's endorsement of that letter, fact discovery was scheduled to close on July 16, 2013; expert discovery was to be completed by November 8, 2013; and the parties were required to be ready for trial by December 1, 2013. (*Id.*).

## C. The Instant Motion

In or about May 2013, Defendants determined that they had a potential statute of limitations defense if the relevant accrual date under New York law were deemed to be the date of completion of performance, rather than the date of injury. In sworn affidavits submitted in support of the instant motion to amend, Defendants' counsel advanced various reasons for the delay in raising a limitations defense. (Dkt. # 38, 44).[3] Counsel sourced several of these reasons to the amount of

---

[3] Plaintiff asks the Court "to strike all legal arguments and facts outside [defense counsel's] personal knowledge." (Plaintiff's Memorandum of Law in Opposition to Motion to Amend

5

time that had passed since Defendants installed the plumbing equipment. (*See, e.g.*, Del Sordo Aff. ¶¶ 6, 7, 10). According to counsel, the only records in Defendants' possession as to work completed at 88 Greenwich were De-Con's subcontract with Black Diamonds and some shop drawings. (*Id.* ¶ 6). In addition, witnesses who could provide detail on the allegations asserted in the Complaint either were unavailable or could not clarify the scope of Defendants' work or the timing of its completion. (*Id.* ¶¶ 6-7, 10).

According to counsel, at the time the Complaint was filed, Defendants had difficulty identifying the chronology of events concerning the installation of the plumbing equipment, including the date by which the work performed under the subcontract with Black Diamonds had been substantially performed. (Del Sordo Aff. ¶¶ 6, 12; *see also id.* ¶ 4 (claiming confusion from allegations in Complaint that installation had been done during the process of converting 88 Greenwich to condominium units)). As a further complication, counsel referenced "delays in any meaningful discovery" in October and November 2012 occasioned by Hurricane Sandy and by counsel's own medical issues. (*Id.* ¶ 8).

In the course of explaining Defendants' omission of the statute of limitations defense from the Answer, defense counsel acknowledged that "more time was spent in verifying the facts as opposed to legal research on a rare legal doctrine," and that

---

("Opp. Mem.") at 9 n.5). In resolving this motion, the Court has not considered information contained in the affidavits that does not appear to be based on personal knowledge. *See Ugarte* v. *Johnson*, 40 F. Supp. 2d 178 (S.D.N.Y. 1999) (noting that an affirmation improperly contained "factual information not based on personal knowledge and legal argument") (collecting cases); *cf. Pape* v. *Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07 Civ. 8828 (ER), 2013 WL 3929630 (S.D.N.Y. July 30, 2013) (disregarding legal arguments made in affidavit).

counsel "assumed … that the statute of limitations began to run as of the date of injury to the property as opposed to the date of substantial completion." (Del Sordo Aff. ¶ 12).

Counsel identified that Defendants may have a statute of limitations defense in or about May 2013, and contacted Plaintiff on May 15, 2013, to request its consent to Defendants filing an amended Answer that included the defense. (Del Sordo Aff., ¶ 13, Exh. L). Plaintiffs did not give consent; consequently, Defendants sought and received permission from the Court to file the instant motion to amend their answer. (Dkt. # 31, 32).

## DISCUSSION

### A. The Standard of Review

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (instructing that the mandate that leave to amend should "be freely given when justice so requires … is to be heeded"); *Ruffolo* v. *Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "[I]t is within the sound discretion of the district court whether to grant or deny leave to amend." *Zahra* v. *Town of Southold*, 48 F.3d 674, 687 (2d Cir. 1995). Moreover, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block* v. *First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993). When determining whether to grant leave to amend, district courts consider: (i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith;

7

(iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile. *See Foman*, 371 U.S. at 182; *see also Gormin* v. *Hubregsen*, No. 08 Civ. 7674 (PGG), 2009 WL 35020, at *1 (S.D.N.Y. Jan. 6, 2009) (granting motion).

Where the court has filed a scheduling order pursuant to Rule 16(b) of the Federal Rules of Civil Procedure that limits the parties' ability to amend the complaint, "the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement in Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski* v. *Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting older versions of Federal Rules of Civil Procedure 15(a) and 16(b)), *cited in Holmes* v. *Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009). Whether good cause exists requires the court to inquire into the "diligence of the moving party." *Id.* Diligence of the moving party "is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244-45 (2d Cir. 2007).

B.  Application

   1.  **Defendants Have Not Waived Any Statute of Limitations Defense**

As a preliminary matter, Plaintiff argues that Defendants have waived their right to assert a statute of limitations defense by (i) failing to include it in the Answer and (ii) seeking leave to amend the Answer after the dates set forth in the

Court's scheduling orders. (Opp. Mem. at 7-8). But while an affirmative defense, including a limitations defense, may be waived under Fed. R. Civ. P. 8(c) if it is not set forth in a responsive pleading, any waiver would be vitiated by a court order granting leave to amend the relevant pleading. *See Strauss* v. *Douglas Aircraft Co.*, 404 F.2d 1152 (2d Cir. 1968) (a court may grant leave to amend an answer to assert a statute of limitations defense). Accordingly, it remains within the Court's discretion to grant Defendants leave to assert this defense. *Block*, 988 F.2d at 351 (holding that the district court did not abuse its discretion in granting defendants leave to amend their answer to include a statue of limitations defense); *see also Zoll* v. *Jordache Enter., Inc.*, No. 01 Civ. 1339 (CSH), 2002 WL 485733, at *4 (S.D.N.Y. Mar. 29, 2002) (granting defendant's motion to amend its answer to assert an affirmative statute of limitations defense); *White-Ruiz* v. *City of New York*, No. 93 Civ. 7233 (DLC) (MHD), 1996 WL 744892, at *2 (S.D.N.Y. Dec. 31, 1996) ("[T]he defendants' failure to plead a limitations defense in the original answer, and their lengthy delay in seeking to amend to assert that defense, do not provide a basis for deeming the defense to have been waived."); *Calzaturificio Rangoni, S.A.* v. *U.S. Shoe Corp.*, No. 92 Civ. 2020 (JFK), 1993 WL 485753, at *2 (S.D.N.Y. Nov. 23, 1993) ("[T]he failure to include the statute of limitations defense in the original answer does not constitute a waiver foreclosing the requested amendment.").

Plaintiff similarly argues that Defendants are barred from amending the Answer because their request was made after the deadlines for amendments set forth in the initial and amended case management plans filed by the Court in this case. (Opp. Mem. at 7-8). As explained above, however, the fact that Defendants

9

sought to amend the Answer two months after the deadline specified in the January 2013 scheduling order is relevant, but not dispositive. It requires the Court to balance the inclusionary approach embodied in Rule 15(a) with the desire for finality embodied in Rule 16(b). *Grochowski*, 318 F.3d at 86.

> 2. **Defendants Acted in Good Faith and Did Not Unduly Delay In Making the Proposed Amendment**

Considering the record in its totality, the Court finds that Defendants did not unduly delay their amendment and acted in good faith, such that granting leave to amend the Answer would accord with Rule 15. It can hardly be disputed that identifying the operative facts and dates in this matter has been complicated by a number of factors, including the passage of time, the multiple conveyances of 88 Greenwich, the number of parties potentially involved, and the seeming paucity of individuals with knowledge of the relevant facts. There is, similarly, no evidence to suggest that the extensions to the discovery schedule were the product of any dilatory conduct by Defendants; instead, the extensions were appropriate responses to circumstances (medical and meteorological) outside of the parties' control. Defense counsel contacted Plaintiff once counsel had identified the necessary facts and law to establish the statute of limitation defense, and when Plaintiff refused to consent to the amendment, promptly sought leave from the Court to amend the Answer.

When the inquiry is recast as one into the "good cause" required by Rule 16(b), Defendants also succeed, although the case is somewhat closer. Defendants concede, for instance, that the De-Con subcontract that was in their possession at

the time the Complaint was filed was dated 1999. (Del Sordo Aff. ¶ 6). Thus, while Defendants might not have known "what work was done after the completion of defendants' installation or whether either of the defendants had been engaged to do work subsequent to the completion of the sub contract work" (*id.*), they did know, at or shortly after filing the Complaint, that the incident prompting the lawsuit had occurred some 11 years after the subcontract was signed. Moreover, the admitted gaps in information and delays in discovery may have been less relevant here, since the real issue concerned which of New York's statutory limitations periods applied, and not when that period was implicated. Finally, while Defendants have suggested that the filing of Victaulic's third-party answer in December of 2012 — which raised a limitations defense — put Plaintiff on notice of that defense (*see* Memorandum of Law in Support at 2; *see also* Del Sordo Aff. ¶ 9), it also put Defendants on notice of this defense.

In this regard, Plaintiff maintains that there is no justification for the requested relief because Defendants have not set forth any facts or law that was not available at the time their Answer was filed. (Opp. Mem. at 8-14). Defendants, however, need not prove that they uncovered new facts or law in order for this Court to grant leave to amend. *See Green* v. *Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (granting leave to amend where movant admitted that "all of the information necessary for his proposed amended complaint was known to him from the start"); *see also Town of New Windsor* v. *Tesa Tuck, Inc.*, 919 F. Supp. 662, 676 (S.D.N.Y. 1996) (same); *ESI Montgomery Cnty., Inc.* v. *Montenay Intern. Corp.*, 899 F. Supp. 1061, 1069 (S.D.N.Y. 1995) (granting plaintiff's motion to amend where

11

defendant alleged that plaintiff "had access to the facts underlying [the claims it sought to assert] since before it filed its original complaint"); *but see Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000) (denying leave to amend where movant "had all the information necessary to support a breach of contract claim, and nothing he learned in discovery or otherwise altered that fact"); *Compania Embotelladora Del Pacifico, S.A.* v. *Pepsi Cola Co.*, 607 F. Supp. 2d 600, 602 (S.D.N.Y. 2009) ("[C]ourts have found good cause to be lacking where, as here, the moving party had knowledge of the facts and circumstances in the case for a period of several years and could have made their motion [to amend] within the specified time period."). Defendants' conduct (and, more specifically, their diligence) is one component of the Rule 16(b) good cause analysis.

Plaintiff also argues that counsel's failure to identify the statute of limitations defense at the time the Answer was filed requires rejection of Defendants' motion. (Opp. Mem. at 12). Again, however, this one fact is not dispositive, and the cases cited by Plaintiff on this issue are inapposite. *See United States* v. *Boykoff*, 186 F. Supp. 2d 347 (S.D.N.Y. 2002) (noting that ignorance of the law is no excuse even for an attorney where the defendant, who was also an attorney, sought to suppress certain statements made to federal agents); *In re Casablanca*, 14 B.R. 527, 528 (S.D.N.Y. 1981) (holding that attorney cannot avoid the legal import of signing a legally binding document because "[t]he time-worn shibboleth that ignorance of the law is no excuse applied with equal vigor to an attorney"). In other cases, courts in this District have granted leave to amend to include a statute of limitations defense, even where the basis of the request includes

counsel's failure to initially identify the defense. *See Green*, 50 F.R.D. at 223 ("[N]either long delay nor the fact that a proposed amendment is motivated by an afterthought of counsel as to the best theory upon which to proceed, by themselves, suffice as reasons for denying leave to amend."); *cf. White-Ruiz,* 1996 WL 744892, at *2 (granting leave to amend to include a statute of limitations defense where "[c]ounsel's explanation for the peculiar timing of the request is simply a change in trial tactics occasioned by the substitution of new attorneys to handle the trial").

On balance, the Court finds that Defendants were sufficiently diligent. At the inception of the case, Defendants appropriately focused their efforts on ascertaining the scope of the work that they had performed and had undertaken to perform; the date of substantial completion of that work; and the possibility of subsequent work (or modifications to Defendants' work) by other parties that might have resulted in the plumbing joint rupture — all of which was necessary to inform Defendants' legal position. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Forman*, 371 U.S. at 181-82. It would contravene the purpose of the Federal Rules — and, on these facts, be unjust — to deny amendment because of defense counsel's delayed recognition of the statute of limitation defense.

### 3. The Proposed Amendment Would Not Unfairly Prejudice Plaintiff

The Second Circuit has made clear that prejudice to the non-moving party is a key inquiry under the Rule 15(a) and Rule 16(b) analyses. *See Kassner*, 496 F.3d

13

at 244-45 (noting that a court, "in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants"); *see also AEP Energy Serv. Gas Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (identifying prejudice to the opposing party resulting from a proposed amendment as among the "most important" reasons to deny leave to amend); *State Teachers Ret. Bd.* v. *Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (requiring showing of bad faith or undue prejudice in Rule 15(a) analysis). In determining what constitutes prejudice, a court considers whether the inclusion of the new claim would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350 (collecting cases). None of these factors is implicated in this case.

      Plaintiff argues that the amendment would be prejudicial because initial paper discovery has been completed, multiple depositions have been conducted, and Plaintiff will now incur additional fees, costs, and time completing additional discovery. (Opp. Memo. at 22-23). Notably, however, at the time Defendants first requested Plaintiff's consent to amend, and even at the time Defendants filed the instant motion, neither fact nor expert discovery had been completed. (Dkt. # 31).

      More fundamentally, irrespective of when discovery will close, the proposed amendment would require scant, if any, additional discovery, inasmuch as the facts necessary to defend against a statute of limitations defense (*e.g.*, the date on which

14

the plumbing installation was completed and the ownership of 88 Greenwich throughout the relevant time period), have already been disclosed. (Compl. ¶ 13). Indeed, Plaintiff fails to identify any information that it would need to defend against such a claim, nor any "additional discovery" that is necessary, except to state that certain depositions may need to be continued. (Opp. Memo. at 22). Such conclusory statements do not establish prejudice sufficient to deny the motion to amend. *See Groner* v. *Foot Clinic of New York*, No. 94 Civ. 2155 (PKL), 1994 WL 708136 (S.D.N.Y. Dec. 19, 1994) (granting motion to amend to include a statute of limitations defense because, among other things, "the proposed defenses would likely not impose significant additional discovery burdens"); *see also Salomon v. Adderley Indus., Inc.*, No. 11 Civ. 6043 (PAC), — F. Supp. 2d —, 2013 WL 4308569, at *3 (S.D.N.Y. Aug. 16, 2013) (same); *Powell* v. *Metro One Loss Prevention Serv. Group (Guard Div. NY), Inc.*, No. 12 Civ. 4221 (LAP) (DF), 2013 WL 3956377, at *5 (S.D.N.Y. July 26, 2013) (granting leave to amend where non-movant "has not demonstrated that the amendment would subject it to any undue burden or would materially delay the ultimate resolution of this case").

As discovery is ongoing, and trial is not anticipated to begin for several months, the amendment would not significantly delay the resolution of this case. This is not a case in which Defendants have requested, at the eleventh hour, to assert an amendment that would cause undue prejudice to Plaintiff. At this stage in the litigation, Plaintiff has ample time, in advance of trial or any dispositive motion practice, to prepare its defense. Indeed, courts have granted leave to amend an answer to assert a statute of limitations defense in cases where litigation has

progressed significantly further than it has in this case. *See, e.g.*, *Kelly* v. *A1 Tech.*, No. 09 Civ. 962 (LAK) (MHD), 2010 WL 1541585, at *17-18 (S.D.N.Y. Apr. 12, 2010) (recommending that district court grant defendant's request to amend its answer to assert a statute of limitations defense, and finding that plaintiff would not be prejudiced where request to amend filed at the same time as defendant filed its summary judgment motion); *White-Ruiz*, 1996 WL 744892, at *2 (granting defendant's motion amend to include a statute of limitations defense, where motion filed on the eve of submission of the joint pretrial order, and only two weeks before trial commenced; finding, among other things, "no suggestion that plaintiff would have prepared her case differently or that she has lost any rights or claims that she might otherwise have retained"). So too here. There is no indication that Plaintiff would have litigated this case differently if Defendants had included the statute of limitations defense in their Answer.

Plaintiff does not argue, nor does the record reflect, that Plaintiff "might have been able to discontinue this action and bring another in some state where its claim would not have been barred," had Defendants raised the limitations defense in a more timely fashion. *Dontech, Inc.* v. *York Int'l Corp.*, No. 96 Civ. 4264 (JSM), 1998 WL 171455, at *2 (S.D.N.Y. Apr. 14, 1998) (granting leave to amend the answer to assert a statute of limitations defense). For all of these reasons, the prejudice analysis favors granting Defendants' motion for leave to amend.

### 4.  The Amendment Would Not Be Futile

Finally, Plaintiff argues that leave to amend should not be granted because Defendants' proposed amendment is futile. (Opp. Mem. at 14-21). "An amendment

16

to a pleading will be futile if a proposed claim could not withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Dougherty* v. *Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). "If a proposed amendment seeks to add a defense, which is obviously insufficient for the purpose for which it is offered, so that the amendment will be a useless act, the court will not grant such an amendment." *Credit Suisse First Boston, LLC* v. *Intershop Commc'n AG*, 407 F. Supp. 2d 541, 546 (S.D.N.Y. 2006).

Defendants have posited a defense sufficient to withstand analysis under Rule 12(b). Under New York law, which the Court must apply because this case comes within the Court's diversity jurisdiction, s*ee, e.g.*, *Stuart* v. *Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998), Plaintiff's cause of action is governed by a three-year statute of limitations. N.Y. C.P.L.R. § 214(4) (McKinney 2013) ("The following actions must be commenced within three years … an action to recover damages for an injury to property."). "In cases against architects or contractors, the accrual date for Statute of Limitations purposes is completion of performance … no matter how a claim is characterized in the complaint." *City Sch. District of City of Newburgh* v. *Hugh Stubbins & Assoc.*, 85 N.Y.2d 535, 538 (1995).

Plaintiff filed its Complaint on July 12, 2012, nearly 11 years after the plumbing installation was completed in or around 2001. (Dkt. # 1). Plaintiff contends that because Greenwich Club was not the owner at the time of the plumbing failure, the completion of performance accrual date is inapplicable and the statute of limitations runs from the date of injury on March 29, 2011. (Opp. Mem. at 14-21). A successor-in-interest like Greenwich Club, however, may still be

17

subject to the same statute of limitations period as the initial owner.  *Amedeo Hotels Ltd. P'ship* v. *Zwicker Elec. Co.*, 291 A.D.2d 322, 232 (1st Dep't 2002) ("When the Hotel was conveyed to [plaintiff], it succeeded to any such cause of action against [defendant], and, as the prior owner's successor-in-interest, it is subject to the same defenses that would have been available to [defendant] against the prior owner, including the statute of limitations."); *see also Harbour Pointe Vill. Homeowners Ass'n* v. *Marrano/Marc Equity Joint Venture*, 195 A.D.2d 648 (4th Dep't 1992) (dismissing plaintiff's cause of action against a contractor because the complaint was filed more than three years after the date of completion of construction, where plaintiff was the title owner of the common areas in a condominium, and no contractual relationship existed between the parties); *Bd. of Managers of Yardarm Beach Condo.* v. *Vector Yardarm Corp.*, 109 A.D.2d 684 (1st Dep't 1985) (dismissing a complaint as barred by the statute of limitations where the "owners of interest" in the property had no relationship with the architect).  Accordingly, permitting the amendment would not be futile.

## CONCLUSION

For the foregoing reasons, Defendants' June 17, 2013 motion to amend is GRANTED. Defendants are directed to file their amended answer on or before September 13, 2013. The Clerk of Court is directed to terminate Docket Entry # 37.

In addition, the conference currently scheduled for August 30, 2013, is ADJOURNED until October 2, 2013, at 3:45 p.m.

SO ORDERED.

Dated:   August 27, 2013
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge